# EXHIBIT A

**CAUSE NO. 2006- CI-11755**

| | | |
|---|---|---|
| **ALFRED V. EVANS, JR., INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF CORALIE RUTH EVANS, DECEASED, ALFRED L. EVANS, INDIVIDUALLY; SUSAN ELIZABETH TRIPP AND LARRY TRIPP; JOHN E. SWANEY; FRANCES M. GOMEZ, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF JOHN ALONZO GOMEZ, DECEASED, AND PHILIP J. GOMEZ AND PATRICK M. GOMEZ, INDIVIDUALLY; AND RUDY S. MARTINEZ AND ALICE P. MARTINEZ** | § | **IN THE DISTRICT COURT** |
| **VS.** | § | **57TH JUDICIAL DISTRICT** |
| **DUNN SOUTHEAST, INC. D/B/A R.J. GRIFFIN & COMPANY GENERAL CONTRACTORS; BRANDT ENGINEERING, INC. A/K/A BRANDT MECHANICAL SERVICES, INC.; HESCO INDUSTRIES, INC.; TACO, INC.; BEXAR METROPOLITAN WATER DISTRICT; VHS SAN ANTONIO PARTNERS, L.P. D/B/A NORTH CENTRAL BAPTIST HOSPITAL; PRECISION BOILERS, INC.; CENTRAL BACKHOE AND UTILITIES, LTD; AND UNDERGROUND SERVICES, INC. D/B/A SOFT DIG UNDERGROUND SERVICES, INC.** | § | **BEXAR COUNTY, TEXAS** |

**PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME ALFRED V. EVANS, JR., (hereinafter called "AL EVANS") Individually and On Behalf of the Estate of CORALIE RUTH EVANS, Deceased (hereinafter called "RUTH EVANS") and ALFRED L. EVANS, Individually (hereinafter called "LEN EVANS"); SUSAN ELIZABETH TRIPP (hereinafter called "SUSAN TRIPP") and LARRY TRIPP; JOHN E. SWANEY; FRANCES M. GOMEZ, Individually and on Behalf of the Estate of JOHN ALONZO GOMEZ, Deceased, and PHILIP J. GOMEZ and PATRICK M. GOMEZ,

Individually; and RUDY S. MARTINEZ and ALICE P. MARTINEZ, the Plaintiffs herein (hereinafter called the "**Plaintiffs**"), and file this their Second Amended Original Petition for injuries and damages against DUNN SOUTHEAST, INC. d/b/a R.J. GRIFFIN & COMPANY GENERAL CONTRACTORS; BRANDT ENGINEERING, INC. a/k/a BRANDT MECHANICAL SERVICES, INC.; HESCO INDUSTRIES, INC.; TACO, INC.; BEXAR METROPOLITAN WATER DISTRICT; VHS SAN ANTONIO PARTNERS, L.P. d/b/a NORTH CENTRAL BAPTIST HOSPITAL; PRECISION BOILERS, INC.; CENTRAL BACKHOE AND UTILITIES, LTD.; and UNDERGROUND SERVICES, INC. d/b/a SOFT DIG UNDERGROUND UTILITIES SERVICES, INC., the Defendants herein (hereinafter called "**Defendants**"), and for cause of action would respectfully show unto the Court the following:

## I.
## DISCOVERY PLAN

Pursuant to Rule 190.1 of the TEXAS RULES OF CIVIL PROCEDURE, Plaintiffs hereby request discovery be conducted under a Level 3 Discovery Control Plan.

## II.
## JURISIDICTION/ VENUE

The Court has jurisdiction over the Defendants, DUNN SOUTHEAST, INC. d/b/a R.J. GRIFFIN & COMPANY GENERAL CONTRACTORS; BRANDT ENGINEERING, INC. a/k/a BRANDT MECHANICAL SERVICES, INC.; HESCO INDUSTRIES, INC.; TACO, INC.; VHS SAN ANTONIO PARTNERS, L.P. d/b/a NORTH CENTRAL BAPTIST HOSPITAL; PRECISION BOILERS, INC.; CENTRAL BACKHOE AND UTILITIES, LTD.; and UNDERGROUND SERVICES, INC. d/b/a SOFT DIG UNDERGROUND UTILITIES

SERVICES, INC., based on appropriate subject matter and based upon sufficient amount in controversy.

Further, this Court has jurisdiction over BEXAR METROPOLITAN WATER DISTRICT pursuant to Section 101.021 of the Texas Civil Practice and Remedies Code, more commonly known as the Texas Tort Claims Act, as set forth more particularly herein below.

Venue is proper in this case, inasmuch as all or a substantial part of the events made the basis of this lawsuit occurred in San Antonio, Bexar County, Texas, and, thus, venue is proper pursuant to §15.002(a)(1) of the Texas Civil Practice and Remedies Code.

## III.
## PARTIES

Plaintiffs, ALFRED V. EVANS, JR., Individually and on Behalf of the Estate of CORALIE RUTH EVANS, Deceased, ALFRED L. EVANS, Individually; SUSAN ELIZABETH TRIPP and LARRY TRIPP; JOHN E. SWANEY; FRANCES M. GOMEZ Individually and on Behalf of the Estate of JOHN ALONZO GOMEZ, Deceased, and PHILIP J. GOMEZ and PATRICK M. GOMEZ, Individually; and RUDY S. MARTINEZ and ALICE P. MARTINEZ, are individuals residing in San Antonio, Bexar County, Texas.

Defendant DUNN SOUTHEAST, INC. d/b/a R.J. GRIFFIN AND COMPANY GENERAL CONTRACTORS is a company doing business in the State of Texas. Defendant has previously answered and appeared herein, and therefore, no further service is necessary at this time.

Defendant BRANDT ENGINEERING, INC. a/k/a BRANDT MECHANICAL SERVICES, INC. is a company doing business in the State of Texas. Defendant has previously answered and appeared herein, and no further service is necessary at this time.

Defendant HESCO INDUSTRIES, INC. is a company doing business in the State of Texas. Defendant has previously answered and appeared herein, and no further service is necessary at this time.

Defendant TACO, INC. is a company doing business in the State of Texas. Defendant has previously answered and appeared herein, and no further service is necessary at this time.

Defendant BEXAR METROPOLITAN WATER DISTRICT is a water conservation district located in Bexar County and surrounding counties. Defendant has previously answered and appeared herein, and no further service is necessary at this time.

Defendant VHS SAN ANTONIO PARTNERS, L.P. D/B/A NORTH CENTRAL BAPTIST HOSPITAL is a Texas limited partnership located within the State of Texas, and is in fact doing business within Texas as a healthcare facility. The Defendant has previously answered and appeared herein, and no further service is necessary at this time.

Defendant PRECISION BOILERS, INC. is a company doing business in the State of Texas. Defendant has previously answered and appeared herein, and no further service is necessary at this time.

Defendant CENTRAL BACKHOE AND UTILITIES, LTD. is a limited partnership doing business in the State of Texas. The Defendant may be served with Citation by serving its registered agent for service of process, Mike Sanders, 10800 Braun Road, San Antonio, Bexar County, Texas 78254. **Service of Citation is requested at this time.**

Defendant UNDERGROUND SERVICES, INC. d/b/a SOFT DIG UNDERGROUND UTILTIES SERVICES, INC. is a company doing business in the State of Texas. The Defendant may be served with Citation by serving its registered agent for services of process, James Bailey, 5921 Plainview St., Houston, Texas 77087. **Service of Citation is requested at this time.**

## IV.
## FACTS

RUTH EVANS was born on June 29, 1945. RUTH and AL EVANS were married on September 2, 1967 and were husband and wife for the next 38 years until the day of her untimely demise on May 22, 2006. AL and RUTH EVANS had one child of their marriage, LEN EVANS.

On May 10, 2006, RUTH EVANS visited her dear friend, SUSAN TRIPP, who was a patient at the Defendant institution, NORTH CENTRAL BAPTIST HOSPITAL. RUTH EVANS and her husband AL EVANS visited with SUSAN TRIPP in her hospital room at 1:00 p.m. for approximately one hour. RUTH EVANS again returned to the hospital to visit her friend and saw her at 7:00 p.m. in the intensive care unit.

Approximately one week after these hospital visits, RUTH EVANS developed nausea and diarrhea. Thereafter, she became progressively short of breath, experienced a loss of appetite and weakness. On May 19, 2006 her husband took her to the emergency room at NORTH CENTRL BAPTIST HOSPITAL. At that time she was acutely ill, extremely weak, and confused. RUTH EVANS had a history of smoking, diabetes, chronic back pain and was in remission for non-Hodgkin lymphoma. She had received her last dose of chemotherapy on January 30, 2006.

A work-up by her attending physicians included a chest x-ray. The diagnosis of multi-lobar pneumonia was made. AL EVANS advised his wife's attending physicians that his wife had visited a friend in the hospital who was diagnosed with Legionnaire's disease. RUTH EVANS' doctors performed the appropriate tests and she was confirmed to have contracted Legionnaire's disease. Therefore, the appropriate antibiotics were begun and the patient was

transferred to the intensive care unit. She soon experienced septic shock and acute renal failure. In spite of heroic efforts, RUTH EVANS died on May 22, 2006.

SUSAN TRIPP was born on April 5, 1947 and is married to LARRY TRIPP. They have two daughters, Shelly Cochrin and Sherry Tripp.

SUSAN TRIPP has worked regularly all of her life until approximately two years ago, when she was diagnosed with scoliosis of the spine. SUSAN TRIPP is presently on Social Security Disability. SUSAN TRIPP's pain is controlled by continuously administered medication. Further, her past medical history is significant for hypertension, hypothyroidism and a 25-year history of cigarette smoking.

On Sunday, April 30, 2006, SUSAN TRIPP experienced abdominal cramps, nausea and vomiting. On Tuesday, May 2, 2006, she saw her family physician and was treated medically. However, by Friday, May 5, 2006, her condition worsened and was again seen by her family physician. A CT-Scan was ordered and a bowel obstruction was suspected. Therefore, her physician had her admitted to NORTH CENTRAL BAPTIST HOSPITAL on Friday, May 5, 2006. On Saturday, May 6, 2006, surgery was performed and the bowel obstruction was confirmed. Her surgeon removed part of her right colon. Post-operatively, she initially did fine. On May 10, 2006, her dear friend RUTH EVANS visited her on two occasions. One, while she was still in her room and later that evening in the intensive care unit.

It was on this date that Mr. and Mrs. Tripp were made aware of the fact that the nurses were having considerable problems providing Mrs. Tripp with sufficient hot towels to perform a sponge bath. The nurses had to go to a different part of the hospital to gain access to water hot enough to heat the towels for the sponge bath.

Sometime during that day, Mrs. Tripp began experiencing worsening respiratory difficulties and was transferred to the intensive care unit. Her condition deteriorated rapidly thereafter. She was breathing poorly and was placed on a ventilator with a mask. Soon thereafter, she was advised she had contracted Legionnaire's disease while at NORTH CENTRAL BAPTIST HOSPITAL.

Around May 15, 2006, Mrs. Tripp left ICU and returned to her room. On or about May 24, 2006, she was transferred to Compass Hospital and remained there until June 14, 2006, when she was sent home.

JOHN E. SWANEY is fifty-seven years of age. On June 1, 2006, Mary Myers, Mr. Swaney's companion, suffered a mild heart attack and was admitted to North Central Baptist Hospital. She was seen by a cardiologist by the name of Kalife Kuri, M.D. On Friday she had a cardiac-cath, but the physician, Dr. West was unable to place the stent. They therefore abandoned their efforts and elected to treat the patient medically. She was discharged on June 4, 2006, and was told she has no heart damage, but will remain on medication and she is now asymptomatic. Mr. Swaney, coincidently, had been at NORTH CENTRAL BAPTIST HOSPITAL on May 1, 2006 in the emergency room for stitches to the back of his head.

On Thursday, June 1, 2006 he was present in the emergency room with Ms. Myers and saw her regularly Friday, June 2, Saturday, June 3 and Sunday, June 4, 2006. He was drinking water, etc. while visiting his companion.

On Wednesday, June 7, 2006, he began feeling queasy. On Thursday, June 8, 2006, he was feeling ill. On Friday, June 9th he was feeling miserable. On Saturday, June 10, 2006, he was worse with a temperature of 99.5. On Sunday, June 11, 2006, he was sweating, acutely ill and an ambulance was called and took him back to North Central Baptist Hospital. He arrived

at the hospital on June 11, 2006 at about 4:30 p.m. He was admitted to the progressive care unit (PCU). On June 12, 2006 he was diagnosed with Legionnaire's disease, but he was not told of the diagnosis until the 13th. On Tuesday, June 13th he became non-responsive and was transferred to the ICU unit. On Thursday, June 15, 2006 he left ICU and was sent back to the progressive care unit. He remained at the progressive care unit until Sunday, June 18, 2006. He remained an inpatient until June 27, 2006 and was released.

JOHN ALONZO GOMEZ was born on June 26,1940 and was sixty-five years of age when he was hospitalized at NORTH CENTRAL BAPTIST HOSPITAL on or about April 22, 2006, with a diagnosis of a gastrointestinal bleed. During the course of the hospitalization, he was seen by hospitalists, George Wilcox, D.O. and Dominic Meza, M.D., who diagnosed a duodenal lesion. An oncologist, David Gordon, M.D., was consulted regarding the lesion, and indicated that Mr. Gomez would probably be an appropriate candidate for chemotherapy as it was carcinoma, however, Mr. Gomez' condition deteriorated and on May 2, 2006, he was in critical condition and was intubated. He continued to deteriorate and his kidneys began to shut down, and therefore, on or about May 3, 2006 a nephrologist, Rudolfo Garza, M.D. was consulted, who diagnosed septic shock with acute renal failure. On May 3, 2006, a urinalysis antigen test confirmed that Mr. Gomez had Legionnaire's disease. Despite treatment for the Legionnaire's disease, Mr. Gomez continued to deteriorate and died on or about May 7, 2006, leaving his wife, FRANCES M. GOMEZ, and children, PHILIP J. GOMEZ and PATRICK GOMEZ, as surviving family members.

RUDY S. MARTINEZ was born February 21, 1925, and is married to ALICE P. MARTINEZ. They have seven children: Rudy Martinez, Philip Martinez, Alfred Martinez, Liz Finnegan, Esther Martinez, Roger Martinez, and Marcus Martinez.

On or about May 8, 2006, ALICE. P. MARTINEZ was diagnosed with bilateral lung cancer, and at the request of her treating physician, was admitted to NORTH CENTRAL BAPTIST HOSPITAL for surgical resection of the cancerous lung lesions. During the course of her hospitalization for surgery, her husband, RUDY S. MARTINEZ was with her constantly, staying with her overnight in her room. Mr. Martinez was drinking water while visiting his wife during her hospital stay.

Approximately one week after his wife's hospitalization, Mr. Martinez began feeling very ill and weak. On Monday, May 29, 2006, while retrieving his newspaper, he collapsed in his yard. Passersby noticed him lying in the yard and called an ambulance, which arrived and transported him to NORTH CENTRAL BAPTIST HOSPITAL. He arrived in the emergency room of NORTH CENTRAL BAPTIST HOSPITAL on May 29, 2006 and was admitted for treatment of pneumonia. During the course of this hospitalization, he was diagnosed with Legionnaire's disease. His kidneys began to fail and the family was advised that he would need to go on dialysis, however, with aggressive treatment, he survived the kidney failure, the infection, and was discharged to his home after several days. Following his discharge, Mr. Martinez has remained very weak, unsteady, debilitated, and unable to care for himself and his ill wife.

## V.
## LEGIONNAIRES' DISEASE

Legionnaires' Disease is the common name for an illness caused by Legionella type of bacteria. It is a lung infection and is a form of pneumonia. It is called Legionnaires' disease because it was first identified as the cause of the outbreak of pneumonia that caused thirty-four deaths at 1976 American Legion Convention in Philadelphia, Pennsylvania.

The Legionnaires' bacteria are common warm water microorganism. However, the levels found in nature are so low that it is unlikely individuals will contract the disease from common water sources.

The risk of exposure increases when high concentrations of the organism grow in water systems. Legionnella will live, reproduce and survive within free-living microscopic animals called protozoa. While living within these animals, Legionella bacteria are not only better able to grow, but often become more virulent– meaning better able to produce disease. Legionnella can cause disease only when it is able to increase in population density, present certain virulent factors, and gain transmission into the lungs of susceptible human beings.

When a virulent strain of Legionnella is present in sufficient quantities to cause infection, a susceptible human being who inhales or aspirates water containing these bacteria is at high risk of contracting Legionnaire's disease.

Therefore, important factors that promote the growth colonization and proliferation of Legionnella include:

1. Stagnation of water such as occurring during building construction when water systems are turned off and on.
2. Warm water temperatures between 68 to 122 degrees Fahrenheit. Optimal growth temperatures are between 95 to 113 degrees Fahrenheit.

## VI.
## HISTORY OF LEGIONNAIRES' DISEASE IN SAN ANTONIO

In 1996 San Antonio recorded sixteen Legionnaires cases, which was considerably higher than prior years. Therefore, State and Federal experts tested twelve of our largest hospitals. Legionnella was found in eleven of the twelve hospitals. Some of the researchers concluded that

residents in San Antonio were at a higher risk to contract the disease than people living in other areas.

**VII.**
**RISK FACTORS**

1. Where Legionnella is found to proliferate such as the city of San Antonio;
2. People who are elderly, lung compromised, have compromised immune systems, or weakened by disease, are at high risk to contract Legionnaires' disease. Such patients are found in hospitals;
3. Where the water in the hot water system is not heated above 122 degrees Fahrenheit; and
4. Where the building water system has been disrupted.

**VIII.**
**CONDITIONS EXISTING AT NORTH CENTRAL BAPTIST HOSPITAL IN MAY 2006**

1. San Antonio has been found to have more Legionnella bacilli than most cities;
2. NORTH CENTRAL BAPTIST HOSPITAL treats patients who are elderly, lung compromised, compromised immune systems, have been weakened by disease and, therefore, are at a high risk. This is true of most major hospitals.
3. NORTH CENTRAL BAPTIST HOSPITAL was delivering hot water into the hospital water system at temperatures well below 122 degrees Fahrenheit.
4. In April 2006, just weeks before the Legionnella outbreak, there was a disruption of the building water system. This occurred in relationship to a major building expansion at NORTH CENTRAL BAPTIST HOSPITAL that more than doubled the size of the hospital.

5. The water being delivered to the hospital contained an inadequate amount of chlorine.

## IX.
## WHY WAS THERE AN OUTBREAK OF LEGIONNAIRES' DISEASE AT NORTH CENTRAL BAPTIST HOSPITAL, MAY 2006

1. NORTH CENTRAL BAPTIST HOSPITAL intended that its water system deliver hot water to the hospital at temperatures ranging from 140 to 150 degrees Fahrenheit. At these temperatures, Legionnaires' bacilli are rapidly killed. However, the heating system failed and the water was delivered throughout the hospital at temperatures well below the range required to kill the bacteria. In fact, the water leaving the hot water generator and entering the hospital hot water system was well below 140 degrees Fahrenheit and was in the range that encouraged the growth, colonization, and proliferation of Legionnaires' bacilli.

2. In April 2006, there was a disruption of the building water system. This permitted a proliferation growth and colonization of the Legionnaires' bacilli in the hot water system.

3. When the outbreak of Legionnaires' disease was identified, the water being provided the hospital by BEXAR METROPOLITAN WATER DISTRICT, was analyzed. It was discovered that the chlorine level was far below those levels required to control bacterial growth and proliferation.

4. When the outbreak of Legionnaires' disease was identified, an inspection of the hot water generator system was commenced. The system contains two tanks capable of holding 1500 gallons of water. Steam is delivered via a closed system within the tanks causing the water to rise in temperature high enough to kill

bacteria such as Legionnella bacilli. The hot water generator system included a motor and pump on each tank. The pumps were intended to circulate the water in the tank. This system was designed to assure that the hot water leaving the generator tank to be disseminated throughout the hospital was at the desired 140 to 150 degrees Fahrenheit. An investigation and evaluation of the pumps determined that neither pump was working. Therefore, the water contained in the tanks were not circulating and the temperature of the water being delivered from the tanks were not in the desired range of 140 to 150 degrees Fahrenheit, but was in the dangerous range between 95 and 115 degrees Fahrenheit, the optimal condition for growth and proliferation of the Legionnella bacilli.

## X.
## NEGLIGENCE OF DEFENDANTS

### A. DUNN SOUTHEAST, INC. D/B/A R. J. GRIFFIN & COMPANY GENERAL CONTRACTORS

Vanguard Health Systems, the parent corporation of VHS SAN ANTONIO PARTNERS, L.P. D/B/A NORTH CENTRAL BAPTIST HOSPITAL, as owner of the hospital, contracted with the DUNN SOUTHEAST, INC. D/B/A R.J. GRIFFIN & COMPANY GENERAL CONTRACTORS, to serve as the general contractor on the expansion project at NORTH CENTRAL BAPTIST HOSPITAL in San Antonio, Texas. Plaintiffs believe, allege, and intend to prove that as general contractor, R.J. GRIFFIN & COMPANY GENERAL CONTRACTORS was responsible, in part, in ensuring that the hot water heating system and hot water service lines and faucets of NORTH CENTRAL BAPTIST HOSPITAL delivered water at temperatures that would cause the death of bacteria such as Legionnaires bacilli. Plaintiffs further believe that the Defendant, through its negligence, failed to provide a safe hot water system to the Defendant

hospital, to patients generally, and to these Plaintiffs in particular, and as a result thereof, Plaintiffs were severely injured and damaged as set forth hereinbelow.

**B. <u>BRANDT ENGINEERING, INC. A/K/A BRANDT MECHANICAL SERVICES, INC.</u>**

BRANDT ENGINEERING, INC. A/K/A BRANDT MECHANICAL SERVICES, INC. was retained by NORTH CENTRAL BAPTIST HOSPITAL and R.J. GRIFFIN AND COMPANY GENERAL CONTRACTORS to provide a safe and efficient water delivery system. The hot water system installed by this Defendant failed to perform in a manner anticipated and in fact delivered hot water in a temperature range that encouraged the growth, colonization and proliferation of the Legionnaires' bacilli. Plaintiffs further believe that the Defendant, through its negligence, failed to provide a safe hot water system to the Defendant hospital, to patients generally, and to these Plaintiffs in particular, and as a result thereof, Plaintiffs were severely injured and damaged as set forth hereinbelow.

**C. <u>HESCO INDUSTRIES, INC.</u>**

HESCO INDUSTRIES, INC. is the manufacture of the hot water generator that was installed in the new building expansion project at NORTH CENTRAL BAPTIST HOSPITAL. The hot water generator system was designed and intended to deliver hot water to the hospital in temperature ranges above 122 degrees Fahrenheit. At these desirable temperatures, Legionnaires' bacilli are controlled and die. The hot water generator manufactured by HESCO INDUSTREIS, INC. failed to deliver hot water in the range required and in fact, delivered water in a range that provided a perfect breeding habitat for the Legionnaires' bacilli. HESCO INDUSTRIES, INC.'s failure was due to a design defect in the hot water generator system. Further, such failure was due to a manufacturing defect of the component parts of the hot water

delivery system. As a result of this Defendant's negligence, Plaintiffs were severely injured and damaged as set forth hereinbelow.

**D. TACO, INC.**

The Defendant, TACO, INC. manufactured the pumps that were designed to circulate the water in the hot water generator tank. By doing so, such circulation would facilitate the delivery to the hospital of hot water in a safe range above 120 degrees Fahrenheit. For reasons that are as yet not clear, both pumps failed to function. When Legionnaires' bacilli were discovered to have proliferated within the hospital water system, the hot water generator was inspected and the pumps on both hot water system tanks were frozen. The pump manufactured by the Defendant, TACO, INC. failed due to a design defect in the pump itself. Further, the pump manufactured by the Defendant, TACO, INC. failed due to a manufacturing defect in the pump. The failure of both of the pumps manufactured by TACO, INC. was a cause of the proliferation of Legionnaires' disease at the Defendant hospital. As a result of this Defendant's negligence, Plaintiffs were severely injured and damaged as set forth hereinbelow.

**E. BEXAR METROPOLITAN WATER DISTRICT**

BEXAR METROPOLITAN WATER DISTRICT is a governmental water district which, at all times material herein, supplied water to the NORTH CENTRAL BAPTIST HOSPITAL. Plaintiffs cause of action against BEXAR METROPOLITAN WATER DISTRICT falls within the waiver of governmental immunity afforded by Section 101.021 of the Texas Civil Practice and Remedies Code, more commonly known as the Texas Tort Claims Act, in that the agents, servants, and/or employees of the Defendant BEXAR METROPOLITAN WATER DISTRICT were negligent, and such negligence arose out of a condition and/or use of tangible personal property, namely, inadequately chlorinated water delivered to the hospital, which directly and

proximately resulted in personal injury and death of your Plaintiffs. The negligent acts and/or omissions on the part of the agents, servants and/or employees of BEXAR METROPOLITAN WATER DISTRICT resulted in improperly chlorinated water being delivered to the NORTH CENTRAL BAPTIST HOSPITAL at the time and on the occasions in question, which contributed to the proliferation and growth of legionella bacilli in the water system, and thereby causing infections contracted by Plaintiffs herein, and the resultant injuries and damages set forth hereinbelow.

**F. VHS SAN ANTONIO PARTNERS, L.P. D/B/A NORTH CENTRAL BAPTIST HOSPITAL**

VHS SAN ANTONIO PARTNERS, L.P. D/B/A NORTH CENTRAL BAPTIST HOSPITAL has recently undertaken a vast expansion project whereby they increased the hospital size by more than two-fold. It is common knowledge within the hospital industries that when hospitals undertake major expansion there is an anticipated increased risk in the proliferation of Legionnaires' bacilli within the hospital system. Further, it is well known that when there is an interruption of the water delivery, Legionnaires' bacilli tend to multiply and proliferate. It has been reported that in early April of 2006, a water line was cut which interrupted services and caused problems with toilets and discolored the water. It is Plaintiffs' information and belief that the interruption of the delivery of water in early April of 2006 resulted in multiplication, colonization and proliferation of the Legionnella bacilli in the water system. A thorough evaluation and sampling of the system at that time would have identified the colonization of Legionnella and should have prompted appropriate action to eliminate or minimized the risk to patients at the Defendant's hospital. Further, NORTH CENTRAL BAPTIST HOSPITAL was negligent in failing to recognize the problem within the hot water

delivery system, which caused water to circulate within the system well below temperatures sufficient to control and eliminate Legionnella. These acts of commission and omission were a cause of the injuries and damages sustained by the Plaintiffs as set forth hereinbelow.

**G. PRECISION BOILERS, INC.**

PRECISION BOILERS, INC. is the manufacturer of the hot water generator that was installed in the new building expansion project at NORTH CENTRAL BAPTIST HOSPITAL. The hot water generator system was designed and intended to deliver hot water to the hospital in temperature ranges above 122 degrees Fahrenheit. At these desirable temperatures, Legionnaires' bacilli are controlled and die. The hot water generator manufactured by PRECISION BOILERS, INC. failed to deliver hot water in the range required and in fact, delivered water in a range that provided a perfect breeding habitat for the Legionnaires' bacilli. PRECISION BOILERS, INC.'s failure was due to a design defect in the hot water generator system. Further, such failure was due to a manufacturing defect of the component parts of the hot water delivery system. As a result of this Defendant's negligence, Plaintiffs were severely injured and damaged as set forth hereinbelow.

**H. CENTRAL BACKHOE AND UTILITIES, LTD.**

CENTRAL BACKHOE AND UTITLIES, LTD. was involved in the expansion project. Plaintiffs believe and allege that in early April of 2006, a water line was cut which interrupted services and caused problems with toilets and discolored the water. It is Plaintiffs' information and belief that the interruption of the delivery of water in early April of 2006 contributed to the proliferation and growth of legionella bacilli in the water system, and thereby causing infections contracted by Plaintiffs herein, and the resultant injuries and damages set forth hereinbelow.

**I. UNDERGROUND SERVICES, INC. d/b/a SOFT DIG UNDERGROUND UTILITIES SERVICES, INC.**

UNDERGROUND SERVICES, INC. d/b/a SOFT DIG UNDERGROUND UTILITIES SERVICES, INC. was involved in the expansion project. Plaintiffs believe and allege that in early April of 2006, a water line was cut which interrupted services and caused problems with toilets and discolored the water. It is Plaintiffs' information and belief that the interruption of the delivery of water in early April of 2006 contributed to the proliferation and growth of legionella bacilli in the water system, and thereby causing infections contracted by Plaintiffs herein, and the resultant injuries and damages set forth hereinbelow.

**J. JOINT AND SEVERAL RESPONSIBILITY**

The negligence of the Defendants, as set forth above, operating separately and concurrently, were a proximate causes of the injuries and damages of the Plaintiffs herein. Accordingly, said Defendants are jointly and severally responsible for the injuries and damages sustained by the Plaintiffs herein.

## XI.
## DAMAGES

Plaintiffs would show as a direct and proximate result of the negligent acts and/or omissions of the Defendants herein, the deceased Plaintiff, CORALIE RUTH EVANS, was caused to suffer conscious physical pain and mental pain and anguish prior to the time of her death, for which the Plaintiff, ALFRED V. EVANS, JR., On Behalf of THE ESTATE OF CORALIE RUTH EVANS, DECEASED, seeks recovery herein. Further, due to the Defendants' negligence, THE ESTATE OF CORALIE RUTH EVANS, DECEASED, has been caused to incur reasonable and necessary medical, doctor, hospital, and funeral and burial

expenses for which the Plaintiff, ALFRED V. EVANS, JR., On Behalf of THE ESTATE OF CORALIE RUTH EVANS, DECEASED, seeks recovery herein.

Further, as a direct and proximate result of the negligence of the Defendants herein, the Plaintiff, ALFRED V. EVANS, JR., in his individual capacity, has been caused to suffer a serious loss of the positive benefits flowing from the love, comfort, companionship, and society, which he previously expected to receive from his wife, the deceased Plaintiff, CORALIE RUTH EVANS, and in reasonable probability, he will continue to suffer the same in the future, for which he seeks recovery herein. Further, Plaintiff, ALFRED V. EVANS, JR., in his individual capacity, has been caused to suffer the loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, which he previously expected to receive from his wife, the deceased Plaintiff, CORALIE RUTH EVANS, and in reasonable probability, he will continue to suffer the same in the future, for which he seeks recovery herein. Further, Plaintiff ALFRED V. EVANS, JR., in his individual capacity, has been caused to suffer grief, sorrow, and mental pain and anguish due to the loss of his wife, the deceased Plaintiff, CORALIE RUTH EVANS, and in reasonable probability, he will continue to suffer the same in the future, for which he seeks recovery herein.

Further, as a direct and proximate result of the negligence of the Defendants herein, the Plaintiff, ALFRED L. EVANS, has been caused to suffer serious loss of love, companionship, care, society, comfort, and support which he previously expected to receive from his mother, the deceased Plaintiff, CORALIE RUTH EVANS, and in reasonable probability, he will continue to suffer the same in the future, for which the he seeks recovery herein. Further, the Plaintiff, ALFRED L. EVANS, has been caused to suffer grief, sorrow, and mental pain and anguish due to the loss of his mother, the deceased Plaintiff, CORALIE RUTH EVANS, and in reasonable

probability, he will continue to suffer the same in the future, for which the Plaintiff seeks recovery herein.

Prior to SUSAN ELIZABETH TRIPP's hospitalization she was approximately one hundred and twenty pounds and lost over twenty pounds during her acute illness. At the present time, Mrs. Tripp is still being serviced by Home Health Services. She continues to experience poor balance, weight loss, fatigue, muscle pain and soreness and general malaise. Neither she nor her physicians are, at this time, in a position to speculate on her prognosis.

Plaintiffs would show as a direct and proximate result of the negligent acts and/or omissions of the Defendants herein, the Plaintiff, SUSAN ELIZABETH TRIPP, was caused to suffer severe physical pain and mental anguish in the past, and will, in reasonable probability continue to suffer the same in the future, for which she seeks recovery herein. Further, Plaintiff, SUSAN ELIZABETH TRIP, was caused to suffer physical impairment and physical disfigurement in the past, and will, in reasonable probability continue to suffer the same in the future, for which she seeks recovery herein. Further, Plaintiff, SUSAN ELIZABETH TRIPP, seeks recovery for medical, doctor, hospital, and therapy expenses, incurred in the past, and will, in reasonable probability continue to be incurred in the future.

Plaintiffs would show as a direct and proximate result of the negligent acts and/or omissions of the Defendants herein, the Plaintiff, LARRY TRIPP, the husband of SUSAN ELIZABETH TRIPP, has been caused to suffer the loss of love, affection, solace, companionship, society, assistance, household services, and consortium in the past, and will, in reasonable probability continue to suffer the same in the future, for which the Plaintiff seeks recovery herein.

JOHN E. SWANEY complains he remains somewhat disoriented, he has occasional fever, difficulty sleeping, and has great difficulty walking. He is "de-conditioned", he has lost approximately twenty-five pounds. He complains of overall aching. He is tired all the time and has a loss of energy. JOHN E. SWANEY has been injured and damaged in the following:

Plaintiffs would show as a direct and proximate result of the negligent acts and/or omissions of the Defendants herein, the Plaintiff, JOHN E. SWANEY, was caused to suffer severe physical pain and mental anguish in the past, and will, in reasonable probability continue to suffer the same in the future, for which he seeks recovery herein. Further, Plaintiff, JOHN E. SWANEY, was caused to suffer physical impairment and physical disfigurement in the past, and will, in reasonable probability continue to suffer the same in the future, for which he seeks recovery herein. Further, Plaintiff, JOHN E. SWANEY, seeks recovery for medical, doctor, hospital, and therapy expenses, incurred in the past, and will, in reasonable probability continue to be incurred in the future.

Plaintiffs would show as a direct and proximate result of the negligent acts and/or omissions of the Defendants herein, the deceased Plaintiff, JOHN ALONZO GOMEZ, was caused to suffer conscious physical pain and mental pain and anguish prior to the time of his death, for which the Plaintiff, FRANCES M. GOMEZ, On Behalf of THE ESTATE OF JOHN ALONZO GOMEZ, DECEASED, seeks recovery herein. Further, due to the Defendants' negligence, THE ESTATE OF JOHN ALONZO GOMEZ, DECEASED, has been caused to incur reasonable and necessary medical, doctor, hospital, and funeral and burial expenses for which the Plaintiff, FRANCES M. GOMEZ, On Behalf of THE ESTATE OF JOHN ALONZO GOMEZ, DECEASED, seeks recovery herein.

Further, as a direct and proximate result of the negligence of the Defendants herein, the Plaintiff, FRANCES M. GOMEZ, in her individual capacity, has been caused to suffer a serious loss of the positive benefits flowing from the love, comfort, companionship, and society, which she previously expected to receive from her husband, the deceased Plaintiff, JOHN ALONZO GOMEZ, and in reasonable probability, she will continue to suffer the same in the future, for which she seeks recovery herein. Further, Plaintiff, FRANCES M. GOMEZ, in her individual capacity, has been caused to suffer the loss of care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value, which she previously expected to receive from her husband, the deceased Plaintiff, JOHN ALONZO GOMEZ, and in reasonable probability, she will continue to suffer the same in the future, for which she seeks recovery herein. Further, Plaintiff FRANCES M. GOMEZ, in her individual capacity, has been caused to suffer grief, sorrow, and mental pain and anguish due to the loss of her husband, the deceased Plaintiff, JOHN ALONZO GOMEZ, and in reasonable probability, she will continue to suffer the same in the future, for which she seeks recovery herein.

Furthermore, as a direct and proximate result of the negligence on the part of the Defendants herein, the Plaintiffs, PHILIP J. GOMEZ and PATRICK M. GOMEZ, sons of JOHN ALONZO GOMEZ have been caused to suffer the loss of the love, comfort, companionship, care, society, and support which they previously received from their father and which, in reasonable probability, they will continue to suffer in the future, for which they seek recovery herein. Further, Plaintiffs PHILIP J. GOMEZ and PATRICK M. GOMEZ have been caused to suffer grief, sorrow, mental pain and anguish due to the loss of their father and will, in reasonable probability, continue to suffer the same in the future, for which they seek recovery herein.

Plaintiffs would show as a direct and proximate result of the negligent acts and/or omissions of the Defendants herein, the Plaintiff, RUDY S. MARTINEZ, was caused to suffer severe physical pain and mental anguish in the past, and will, in reasonable probability continue to suffer the same in the future, for which he seeks recovery herein. Further, Plaintiff, RUDY S. MARTINEZ, was caused to suffer physical impairment and physical disfigurement in the past, and will, in reasonable probability continue to suffer the same in the future, for which he seeks recovery herein. Further, Plaintiff, RUDY S. GOMEZ, seeks recovery for medical, doctor, hospital, and therapy expenses, incurred in the past, and will, in reasonable probability continue to be incurred in the future. As a result of the negligence on the part of the Defendants, RUDY S. MARTINEZ continues to suffer from instability, weight loss, fatigue, muscle pain, soreness, debility, and general malaise.

Plaintiffs would show as a direct and proximate result of the negligent acts and/or omissions of the Defendants herein, the Plaintiff, AICE P. MARTINEZ, the wife of RUDY S. MARTINEZ, has been caused to suffer the loss of love, affection, solace, companionship, society, assistance, household services, and consortium in the past, and will, in reasonable probability continue to suffer the same in the future, for which the Plaintiff seeks recovery herein.

Plaintiffs believe and allege that the damages far exceed the jurisdiction limits of the Court.

**Plaintiffs hereby request a trial by jury.**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that the Defendants be duly cited to appear and answer herein, and that upon final hearing of this cause, Plaintiffs have and recover judgment of and from the Defendants, jointly and severally, in an amount in excess of

the jurisdictional limits of this Court, pre- and post-judgment interest as allowed by law, actual damages, costs of court, and for such other and further relief, both general and special, at law or in equity, to which the Plaintiffs may show themselves to be justly entitled.

Respectfully submitted,

LYONS & RHODES, P.C.
126 Villita Street
San Antonio, Texas 78205
Telephone No. (210) 225-5251
Telefax No. (210) 225-6545

By: ______________________________
Clem Lyons
State Bar No. 12742000
Mary Wilson
State Bar No. 21704570
ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been forwarded, in accordance with Tex. R. Civ. P. 21a, on this _____ day of January 2007, to the following counsel of record:

Richard N. Francis, Jr.
PLUNKETT & GIBSON, INC.
Renaissance Plaza
70 N. E. Loop 410, Suite 1100
San Antonio, Texas 78216
ATTORNEY FOR DEFENDANT
VHS SAN ANTONIO PARTNERS, L.P. D/B/A NORTH CENTRAL BAPTIST HOSPITAL

Richard A. Sparr, Jr.
SPARR & BREWSTER, INC.
1313 N.E. Loop 410, Suite 100
San Antonio, Texas 78209
ATTORNEY FOR DEFENDANT
BRANDT ENGINEERING, INC. a/k/a
BRANDT MECHANICAL SERVICES, INC.

Patrick C. Bernal, Esq.
Elizabeth Guerrero Christ
DENTON, NAVARRO, ROCHA & BERNAL
2517 N. Main Avenue
San Antonio, Texas 78212
ATTORNEY FOR DEFENDANT
BEXAR METROPOLITAN WATER DISTRICT

George B. Butts
Jennifer A. Lloyd
DLA Piper US LLP
1221 S. Mopac Expressway, Suite 400
Austin, Texas 78746-6875
ATTORNEY FOR DEFENDANT
DUNN SOUTHEAST, INC. d/b/a R.J. GRIFFIN & COMPANY
GENERAL CONTRACTORS

Judith R. Blakeway
Strasburger & Price, LLP
300 Convent Street, Suite 900
San Antonio, Texas 78205-3715
ATTORNEY FOR DEFENDANT
TACO, INC.

Harvey Ferguson, Jr.
GONZALES, HOBLIT & FERGUSON
One Riverwalk Place
700 N. St. Mary=s Street, Suite 1800
San Antonio, Texas 78205
ATTORNEY FOR DEFENDANT
HESCO INDUSTRIES, INC.

________________________________
Clem Lyons

M:\HOME\WPC\LEGIONAIRES\2ampop2.doc